JENNIFER M. OLIVER (SBN 311196)
jennifer.oliver@bipc.com
BUCHANAN INGERSOLL & ROONEY LLP
One America Plaza
600 West Broadway, Suite 1100
San Diego, CA 92101
Telephone: 619 239 8700
Fax: 619 702 3898

Attorney for Defendant
Lennar Corporation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SILVIA GARCIA, individually and on behalf of all others similarly situated,
Plaintiff,
vs.
LENNAR CORPORATION, a Delaware entity d/b/a WWW.LENNAR.COM,
Defendant.

Case No.: 2:23-cv-10298-FMO-DFM

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY**

Hearing Date: February 8. 2024
Hearing Time: 10:00 am
Location: Courtroom 6D

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

III. APPLICABLE STANDARDS AND PROCEDURES .......... 4

A. Legal Standard .......... 4

B. Burden of Proof .......... 4

C. Extrinsic Documents .......... 4

D. Appropriate Remedies .......... 5

IV. ARGUMENT .......... 6

A. The Question of Arbitrability Is Reserved for the Arbitrator .......... 6

B. If This Court Determines Arbitrability, It Must Compel Arbitration .......... 7

1. The Terms Contain a Valid Agreement to Arbitrate .......... 9

a. A Reasonably Prudent Person Would Be on Inquiry Notice of Lennar's Terms .......... 10

b. Plaintiff Is More Sophisticated Than the Average Website User, Weighing in Favor of Both Actual and Constructive Notice .......... 11

2. Plaintiff's Claims Are Within the Scope of the Arbitration Provision .......... 11

3. Defendant Has Not Waived its Right to Compel Arbitration .......... 13

V. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aanderud v. Superior Ct.*,
13 Cal. App. 5th 880 (2017) .......... 7

*Airbnb, Inc. v. Doe*,
336 So. 3d 698 (Fla. 2022) .......... 6

*Arciniaga v. Gen. Motors Corp.*,
460 F.3d 231 (2d Cir. 2006) .......... 1

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 2, 8

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .......... 4, 9

*Austin Commercial, L.P. v. L.M.C.C. Specialty Contractors, Inc.*,
268 So. 3d 215 (Fla. 2d DCA 2019) .......... 6

*Bell v. Royal Seas Cruises*,
2020 WL 5742189 (S.D. Fla. May 13, 2020) .......... 9, 10, 11

*Caley v. Gulfstream Aerospace Corp.*,
428 F.3d 1359 (11th Cir. 2005) .......... 5

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .......... 4, 8

*Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*
83 Cal. App. 4th 677 (2000) .......... 12

*Coinbase, Inc. v. Bielski*,
599 U.S. 736, 143 S. Ct. 1915, 216 L. Ed. 2d 671 (2023) .......... 6

*Crawford v. Beachbody, LLC*,
No. 14CV1583- GPC KSC, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) .......... 9, 10

*Da Silva v. Darden Restaurants, Inc.*,
No. 17-cv-5663-ODW (Ex), 2018 WL 3533364 (C.D. Cal. July 20, 2018) .......... 5

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................8

*EFund Cap. Partners*, 150 Cal. App. 4th 1311 (2007) ....................6, 12

*Fagerstrom v. Amazon.com, Inc.*,
No. 15-CV-96-BAS-DHB, 2015 WL 6393948 (S.D. Cal. Oct. 21, 2015)....................10

*Feldman v. Google, Inc.*,
513 F. Supp. 2d 229 (E.D. Pa. 2007)....................11

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)....................10

*Garcia v. BPS Direct, LLC*,
No. 23STCV01281 (Cal. Super. Ct. Jan 20, 2023)....................1

*Garcia v. Build.com, Inc.*,
No. 22-CV-01985-DMS-KSC, 2023 WL 4535531 (S.D. Cal. July 13, 2023)....................1

*Garcia v. Coulter Ventures LLC*,
No. 23STCV08872 (Cal. Super. Ct. Apr 20, 2023)....................1

*Garcia v. Cybercartel Int'l, Inc.*,
No. 23STCV16506 (Cal. Super. Ct. Jul 14, 2023)....................1

*Garcia v. Doximity Inc.*,
No. 23STCV09965 (Cal. Super. Ct. May 03, 2023)....................1

*Garcia v. First Factory Inc.*,
No. 23STCV14715 (Cal. Super. Ct. Jun 23, 2023)....................1

*Garcia v. Ifit Inc.*,
No. 23STCV01286 (Cal. Super. Ct. Jan 20, 2023)....................1

*Garcia v. No Borders Dental Res., Inc.*,
No. 22STCV40517 (Cal. Super. Ct. Dec 28, 2022)....................1

*Garcia v. Nuvei Techs. Inc.*,
No. 23STCV14840 (Cal. Super. Ct. Jun 26, 2023)....................1

*Garcia v. Peter Millar LLC*,
Docket No. 23STCV01278 (Cal. Super. Ct. Jan 20, 2023)....................1

*Garcia v. Presidio, Inc.*,
No. 23STCV14712 (Cal. Super. Ct. Jun 23, 2023) ............................................1

*Garcia v. Shopperschoice.com, LLC*,
No. 23STCV08866 (Cal. Super. Ct. Apr 20, 2023) ............................................1

*Garcia v. THGPP LLC*,
No. 23STCV08863 (Cal. Super. Ct. Apr 20, 2023) ............................................1

*Garcia v. Traxxas LP*,
No. 23STCV19818 (Cal. Super. Ct. Aug 18, 2023)............................................1

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)..................................................................................................8

*Glasswall, LLC v. Monadnock Const., Inc.*,
187 So. 3d 248 (Fla. 3d DCA 2016).....................................................................7

*Green Tree Financial Corp.-Alabama v. Randolph*,
531 U.S. 79, 121 S. Ct. 513, 148 L.Ed.2d 373 (2000) ........................................4

*Green Tree Servicing, LLC v. McLeod*,
15 So. 3d 682 (Fla. 2d DCA 2009).......................................................................8

*Guadagno v. E*Trade Bank*,
592 F. Supp. 2d 1263 (C.D. Cal. 2008).........................................................9, 10

*Hirshenson v. Spaccio*,
800 So. 2d 670 (Fla. 5th DCA 2001)..................................................................11

*Home Ins. Co. v. Thomas Indus., Inc.*,
896 F.2d 1352 (11th Cir. 1990) ............................................................................5

*Hubbert v. Dell Corp.*,
359 Ill. App. 3d 976, 835 N.E.2d 113 (Ill. Ct. App. 2005) ......................9, 10, 11

*Johnmohammadi v. Bloomingdales, Inc.*,
755 F.3d 1072 (9th Cir. 2014) ..............................................................................5

*Jones v. Waffle House, Inc.*,
866 F.3d 1257 (11th Cir. 2017) ............................................................................6

*Leventis v. AT&T Advert. Sols.*,
No. 3:11-CV-03437-CMC, 2012 WL 931081 (D.S.C. Mar. 19, 2012).............11

*MetroPCS Commc'ns, Inc. v. Porter*,
273 So. 3d 1025 (Fla. 3d DCA 2018)........10

*Mintz v. Fraade*,
59 So. 3d 1173 (Fla. 4th DCA 2011)........12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)........8, 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)........4

*Murphy v. Courtesy Ford, L.L.C.*,
944 So. 2d 1131 (Fla. 3d DCA 2006)........13

*Nguyen*, 763 F.3d at 1177........10

*Nicosia v. Amazon.com, Inc.*,
84 F. Supp. 3d 142 (E.D.N.Y. 2015)........9, 10

*O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd.*,
944 So.2d 181 (Fla. 2006)........13

*Ocwen Fed. Bank FSB v. LVWD, Ltd.*,
766 So. 2d 248 (Fla. 4th DCA 2000)........11

*Olson v. Fla. Living Options, Inc.*,
210 So. 3d 107 (Fla. 2d DCA 2016)........12

*Palidino v. Avnet Computer Technologies, Inc.*,
134 F.3d 1054 (11th Cir. 1998)........4

*Palm Court NH, L.L.C. v. Dowe*,
336 So. 3d 735 (Fla. 4th DCA 2022)........8

*PDC Labs., Inc. v. Hach Co.*,
No. 09–1110, 2009 WL 2605270 (C.D. Ill. Aug. 25, 2009)........10

*Perera v. H&R Block Eastern Enterps., Inc.*,
914 F. Supp. 2d 1284 (S.D. Fla. 2012)........5

*Phillips v. NCL Corp. Ltd.*,
No. 18-23912, 2019 WL 2288987 (S.D. Fla. May 29, 2019)........5

*Pollstar v. Gigmania, Ltd.*,
170 F.Supp.2d 974 (E.D. Cal. 2000)........9

*Reunion W. Dev. Partners, LLLP v. Guimaraes*, 221 So. 3d 1278 (Fla. 5th DCA 2017)....................6, 7

*Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999)....................8

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999)....................4

*Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635 (9th Cir. 1988)....................5

*Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230 (11th Cir. 2018)....................7

*Stacy David, Inc. v. Consuegra*, 845 So. 2d 303 (Fla. 2d DCA 2003)....................12

*Stapleton v. Nordstrom, Inc.*, No. 19-20193, 2009 WL 10667803 (S.D. Fla. Aug. 11, 2009), report and recommendation adopted, No. 09-20193-CIV, 2009 WL 10668756 (S.D. Fla. Sept. 30, 2009)....................5

*Starke v. Gilt Groupe, Inc.*, No. 13–CV–5497, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)....................10

*Swift v. Zynga Game Network, Inc.*, 805 F.Supp.2d 904 (N.D. Cal. 2011)....................10

*Van Tassell v. United Mktg. Grp.*, 795 F.Supp.2d 770 (N.D. Ill. 2011)....................9

*Varela v. Lamps Plus, Inc.*, No. CV 16-557-DMG, 2016 WL 9110161 (C.D. Cal. July 7, 2016)....................5

**Statutes**

9 U.S.C. § 2....................8

9 U.S.C. §§ 3 & 4....................8

## I. INTRODUCTION

"[I]t is difficult to overstate the strong federal policy in favor of arbitration." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006). That strong federal policy, and the relevant facts, clearly dictate that Plaintiff's claims cannot remain in this Court.

Plaintiff Silvia Garcia ("Plaintiff") is an individual consumer who has filed more than a dozen nearly identical class action complaints in 2023 alone, all against companies operating consumer-facing websites and alleging violation of various California wiretapping laws.[1] Each of these complaints was filed by Plaintiff's counsel Pacific Trial Attorneys, who have themselves flooded California courts with dozens if not hundreds more of these complaints in the past several years.

As Plaintiff—a professional website "tester"—is well aware, she explicitly and voluntarily consented to Lennar's website Terms and Conditions ("Terms") which were conspicuously posted on its home page[2] and which included an agreement to

---

[1] *See, e.g., Garcia v. Build.com, Inc.*, No. 22-CV-01985-DMS-KSC, 2023 WL 4535531, at *5 (S.D. Cal. July 13, 2023) (granting defendant's motion to dismiss wiretapping claims); *Garcia v. Ifit Inc.*, No. 23STCV01286 (Cal. Super. Ct. Jan 20, 2023); *Garcia v. No Borders Dental Res., Inc.*, No. 22STCV40517 (Cal. Super. Ct. Dec 28, 2022); *Garcia v. Peter Millar LLC*, Docket No. 23STCV01278 (Cal. Super. Ct. Jan 20, 2023); *Garcia v. BPS Direct, LLC*, No. 23STCV01281 (Cal. Super. Ct. Jan 20, 2023); *Garcia v. THGPP LLC*, No. 23STCV08863 (Cal. Super. Ct. Apr 20, 2023); *Garcia v. Shopperschoice.com, LLC*, No. 23STCV08866 (Cal. Super. Ct. Apr 20, 2023); *Garcia v. Cybercartel Int'l, Inc.*, No. 23STCV16506 (Cal. Super. Ct. Jul 14, 2023); *Garcia v. Coulter Ventures LLC*, No. 23STCV08872 (Cal. Super. Ct. Apr 20, 2023); *Garcia v. First Factory Inc.*, No. 23STCV14715 (Cal. Super. Ct. Jun 23, 2023); *Garcia v. Presidio, Inc.*, No. 23STCV14712 (Cal. Super. Ct. Jun 23, 2023); *Garcia v. Doximity Inc.*, No. 23STCV09965 (Cal. Super. Ct. May 03, 2023); *Garcia v. Traxxas LP*, No. 23STCV19818 (Cal. Super. Ct. Aug 18, 2023); *Garcia v. Nuvei Techs. Inc.*, No. 23STCV14840 (Cal. Super. Ct. Jun 26, 2023).

[2] Lennar's Terms were revised in August of 2023. Plaintiff sent a pre-litigation demand letter to Lennar in May of 2023, therefore Plaintiff visited the site when the previous Terms were in place. *See* Declaration of Tony Boone attached hereto ("Boone Decl.") ¶ 3. The current Terms also contain a mandatory arbitration clause

arbitrate all disputes that relate to the online Properties[3] in any way. The Terms also provide that such disputes must be resolved under Florida law, and on an individual, non-class basis. Boone Decl. Ex. A at 4.

Despite consenting to these Terms, Plaintiff filed this action in court seeking to represent a class of consumers who used the chat function on Lennar's website, alleging that Lennar "secretly enables and allows a third-party spyware company to wiretap and eavesdrop upon the private conversations of everyone who communicates through the chat feature at lennar.com." First Amended Complaint ("FAC") at p. 1. But these claims are clearly related to the Properties and therefore subject to the Terms, which constitute a valid and enforceable agreement to arbitrate under the Federal Arbitration Act ("FAA") 9 U.S.C. § 2 et seq., and the now well-established rule that class-action waivers in arbitration agreements are enforceable. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). The Court must therefore require Plaintiff to honor her valid agreement and dismiss—or at a minimum stay—this action.

## II. STATEMENT OF FACTS

Defendant Lennar Corporation ("Defendant" or "Lennar") is one of the nation's premier builders of new homes. Lennar is a Delaware corporation with its principal place of business in Miami, Florida. FAC at ¶ 7. At all relevant times, Lennar has owned and operated the website lennar.com, which it uses to provide information and market its homes to potential customers. Boone Decl. ¶ 2.

---

and class action waiver and can be viewed at https://www.lennar.com/termsandconditions. *Id.* at ¶ 4.

[3] The Terms define "Properties" as "our websites, including Lennar.com, myLennar, CalAtlantichomes.com and any mobile app provided by Lennar, any associated Lennar controlled social media pages, and all other Lennar information, services, software functionality, and/or materials located thereon or available therefrom." *See* Boone Decl. Ex. A at 1.

Prominently displayed in the footer of most if not all (Boone Decl. ¶ 5) pages of the lennar.com site is a link to its website Terms, which contain the following:

i. An explicit agreement that "[a]ny claims or disputes relating to the Properties shall be resolved exclusively by binding arbitration..." Boone Decl. Ex. A at 4;[4]

ii. A class action waiver in all capital font: "YOU ALSO GIVE UP YOUR RIGHT TO BRING OR PARTICIPATE IN CLASS ACTIONS BROUGHT IN COURT, AND TO ARBITRATE OR PARTICIPATE IN ARBITRATION ON A CLASS BASIS," *id*. (adding that "[n]o arbitration shall be consolidated or combined with any other arbitration, or proceed on a representative basis or capacity for other parties, except with our express written consent"); and

iii. An agreement that any disputes will be governed by "federal law and the laws of the State of Florida, without reference to choice of law principles." *Id.*

Plaintiff purports to represent a class of "[a]ll persons within the state of California who within the statute of limitations period: (1) communicated with Defendant via the chat feature on Defendant's Website and whose communications were eavesdropped upon without prior consent; or (2) visited Defendant's Website and whose privacy was violated as described above." FAC ¶ 47. Therefore, Plaintiff and all putative class members are users of Lennar's website Properties whose claims relate to their use of the website Properties.

---

[4] Although the Terms provide for arbitration to take place under the AAA Commercial Rules in the State of Florida, they also provide that Lennar may consent to a different location. To the extent Plaintiff desires to proceed with arbitration in her home district in California, Lennar consents to that request. Lennar also consents to the application of the AAA's Consumer Arbitration Rules.

## III. APPLICABLE STANDARDS AND PROCEDURES

### A. Legal Standard

The Court's role in resolving a motion to compel arbitration is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "Given the strong federal policy in favor of arbitration, the standard for demonstrating arbitrability is not high." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). A "presumption of arbitrability" attaches whenever a court recognizes a valid contract containing an arbitration clause. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Palidino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998) (holding that the FAA "creates a presumption in favor of arbitrability"). Even "the most minimal indication of the parties' intent to arbitrate must be given full effect." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25.

### B. Burden of Proof

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 81, 121 S. Ct. 513, 148 L.Ed.2d 373 (2000).

### C. Extrinsic Documents

The questions of arbitrability and class waiver, while independent issues, are both primarily a question of law requiring review of the parties' contract and the allegations of the complaint. Accordingly, unlike a typical motion to dismiss, the Court may consider extrinsic evidence in the form of the parties' contract, even if the complaint fails to attach that contract. Thus, in determining whether Plaintiff must arbitrate her claims, it is appropriate for the Court to consider extrinsic evidence offered by Lennar, including the Terms. The Court need not accept Plaintiff's

allegations as true if they are controverted by Lennar's factual submissions. *Home Ins. Co. v. Thomas Indus., Inc*., 896 F.2d 1352, 1355 (11th Cir. 1990). "[W]here all issues presented in the lawsuit are arbitrable …, the Eleventh Circuit and this Court have found that a dismissal of the lawsuit is a proper remedy." *Phillips v. NCL Corp. Ltd*., No. 18-23912, 2019 WL 2288987, *2 (S.D. Fla. May 29, 2019).

**D. Appropriate Remedies**

Where, as here, all issues presented in the lawsuit are arbitrable, Florida courts have found that a dismissal of the lawsuit is a proper remedy. *See Caley v. Gulfstream Aerospace Corp*., 428 F.3d 1359, 1379 (11th Cir. 2005).[5] California courts are in accord: "[i]n the Ninth Circuit, the district court has discretion to dismiss a party's complaint where the court finds that the arbitration clause ensnares all of the party's claims." *Da Silva v. Darden Restaurants, Inc*., No. 17-cv-5663-ODW (Ex), 2018 WL 3533364, at *5 (C.D. Cal. July 20, 2018) (dismissing action where arbitration agreement covered all of the plaintiff's claims).[6] A motion to compel arbitration stays the underlying litigation until a final resolution on the issue of arbitrability. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 143 S. Ct. 1915, 216 L. Ed. 2d 671 (2023).

---

[5] *See also Perera v. H&R Block Eastern Enterps., Inc*., 914 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012); *Stapleton v. Nordstrom, Inc*., No. 19-20193, 2009 WL 10667803, at *4 (S.D. Fla. Aug. 11, 2009), report and recommendation adopted, No. 09-20193-CIV, 2009 WL 10668756 (S.D. Fla. Sept. 30, 2009).

[6] *See also Sparling v. Hoffman Const. Co., Inc*., 864 F.2d 635, 638 (9th Cir. 1988) ("9 U.S.C. section 3 gives a court authority, upon application by one of the parties, to grant a stay pending ... [compliance with the contractual] arbitration clause ... [T]he provision [does not, however,] limit the court's authority to grant a dismissal ...."); *Johnmohammadi v. Bloomingdales, Inc*., 755 F.3d 1072, 1078 (9th Cir. 2014)) (affirming district court's grant of motion to compel arbitration and dismissal of action without prejudice where plaintiff accepted arbitration agreement and class action waiver); *Varela v. Lamps Plus, Inc*., No. CV 16-557-DMG (KSx), 2016 WL 9110161, at *7 (C.D. Cal. July 7, 2016) ("Given that the Court is granting the motion to compel arbitration, all of Varela's claims against Lamps Plus are dismissed without prejudice.").

## IV. ARGUMENT

Whether considering this issue under Florida or California law, the conclusion is the same: Plaintiff's claims must be arbitrated. Florida courts favor arbitration as a means of alternative dispute resolution and have consistently held that any doubt concerning the scope of the arbitration clause should be resolved in favor of arbitration. *Austin Commercial, L.P. v. L.M.C.C. Specialty Contractors, Inc.*, 268 So. 3d 215, 219 (Fla. 2d DCA 2019) ("public policy favors arbitration of disputes and thus courts should resolve doubts concerning the scope of such agreements in favor of arbitration"). This is also true under California law. *EFund Cap. Partners*, 150 Cal. App. 4th 1311, 1321 (2007) ("[S]trong public policy has resulted in the general rule that arbitration should be upheld 'unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute.'"). The FAA likewise evinces "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017).

For all the reasons below, Plaintiff's claims must be dismissed.

### A. The Question of Arbitrability Is Reserved for the Arbitrator

Lennar's Terms clearly provide that the question of arbitrability is reserved for the arbitrator. Boone Decl. Ex. A at 4 ("Any disputes regarding the arbitration provision shall be resolved by the arbitrator."). While arbitrability is generally an issue for trial courts to decide, courts must delegate the authority to the arbitrator, where, as here, the parties' contract so provides. *See Reunion W. Dev. Partners, LLLP v. Guimaraes*, 221 So. 3d 1278, 1280 (Fla. 5th DCA 2017). For example, in *Airbnb, Inc. v. Doe,* 336 So. 3d 698, 705 (Fla. 2022), the Florida Supreme Court recently held that where a contract "incorporate[s] by reference the AAA Rules that expressly delegate arbitrability determinations to an arbitrator, the agreement clearly and unmistakably evidences the parties' intent to empower an arbitrator, rather than a court, to resolve questions of arbitrability." *See also Spirit Airlines, Inc. v. Maizes*,

899 F.3d 1230, 1233-34 (11th Cir. 2018) (incorporation of AAA rules was "clear and unmistakable evidence" that the parties chose to have an arbitrator decide those threshold issues).[7]

The Terms also require that the arbitration be conducted by AAA. Boone Decl. Ex. A at 4. The AAA Rules, in turn, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Consumer R-14; AAA Commercial R-7. Thus, there is "clear and unmistakable evidence" that the parties agreed that AAA Rules apply and the question of arbitrability must be resolved by the arbitrator. *See also Reunion*, 221 So. 3d at 1280 ("Where, like here, the language of the contract clearly states that AAA rules govern, then said rules are expressly incorporated into the contract."); *Glasswall, LLC v. Monadnock Const., Inc.*, 187 So. 3d 248, 249 (Fla. 3d DCA 2016) (finding parties' contracts evidenced a "clear and unmistakable" intent that an arbitrator decide arbitrability because they explicitly incorporated the Rules of the AAA). The Court should therefore defer the question of arbitrability to the arbitrator as the parties agreed.

**B. If This Court Determines Arbitrability, It Must Compel Arbitration**

Even if this Court decides the issue of arbitrability, it must decline to hear these claims. Lennar's Terms specifically provides that the "Terms and Conditions are governed by federal law and the laws of the State of Florida, without reference to choice of law principles." Boone Decl. Ex. A at 4. The Court must therefore look to the FAA, as well as Florida law, when considering the question of arbitrability. *Palm*

[7] California courts similarly hold that "an arbitration provision's reference to, or incorporation of, arbitration rules that give the arbitrator the power or responsibility to decide issues of arbitrability may constitute clear and unmistakable evidence the parties intended the arbitrator to decide those issues." *Aanderud v. Superior Ct.*, 13 Cal. App. 5th 880, 892 (2017) (reversing lower court's order denying motion to compel arbitration).

*Court NH, L.L.C. v. Dowe*, 336 So. 3d 735, 738 (Fla. 4th DCA 2022).

Under the FAA, written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress passed the FAA to "reverse the longstanding judicial hostility to arbitration agreements[,] ... to place arbitration agreements upon the same footing as other contracts[,]" *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 24 (1991), and "to ensure the enforcement of arbitration agreements according to their terms …." *Concepcion*, 563 U.S. at 335. As a result, an "emphatic federal policy ... favor[s] … arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 631 (1985).

"Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999); *Green Tree Servicing, LLC v. McLeod*, 15 So. 3d 682, 686 (Fla. 2d DCA 2009); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000) (noting that the FAA requires courts to compel arbitration if (1) a valid agreement to arbitrate exists and (2) the dispute falls within the scope of that agreement).

When all of these conditions are satisfied, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3 & 4). Here, the Terms contain a valid arbitration agreement, the FAC's allegations are encompassed by the Terms, and Defendant has not waived its right to arbitrate. All requirements are met and Plaintiff's claims must be arbitrated.

**1. The Terms Contain a Valid Agreement to Arbitrate**

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp.*, 473 U.S. at 626. When making this determination, courts should be mindful "that where the contract contains an arbitration clause, there is a presumption of arbitrability." *AT&T Techs., Inc.*, 475 U.S. at 650.

Lennar's Terms constitute what federal courts have called a "browsewrap" agreement, in which a website owner posts terms and conditions somewhere on the website, usually accessible through a hyperlink. Browsewrap agreements, including those with arbitration clauses, are frequently enforced by the courts. *See, e.g., Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 152-53 (E.D.N.Y. 2015); *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008); *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 984, 835 N.E.2d 113, 121 (Ill. Ct. App. 2005).

"Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of a browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Van Tassell v. United Mktg. Grp.*, 795 F.Supp.2d 770, 790 (N.D. Ill. 2011) (citing *Pollstar v. Gigmania, Ltd.*, 170 F.Supp.2d 974, 981 (E.D. Cal. 2000); *Bell v. Royal Seas Cruises*, 2020 WL 5742189 at *5 (S.D. Fla. May 13, 2020) (affirming that Florida courts approve browsewrap contracts when a website user "has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice."). "The conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design all contribute to whether a reasonably prudent user would have inquiry notice of a browsewrap agreement." *Crawford v. Beachbody, LLC*, No. 14CV1583- GPC KSC, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014); *see also Bell*, 2020 WL 5742189.

### a. A Reasonably Prudent Person Would Be on Inquiry Notice of Lennar's Terms

Plaintiff had reasonable inquiry notice of Lennar's Terms and is therefore bound by the arbitration clause. Lennar's Terms are located in a hyperlink on the home page of its website, where such terms are typically found, as well as at the bottom of most if not all other lennar.com pages. Boone Decl. at ¶ 5; Ex. B.[8] This is enough to put Plaintiff on reasonable notice of the Terms and the arbitration clause. Courts have enforced Terms of Use found in browsewrap agreements under similar facts, where hyperlinked terms and conditions are conspicuously placed. *See, e.g, Nicosia*, 84 F.Supp.3d at 152 (finding that Plaintiff was on inquiry notice of browsewrap terms in part because of the conspicuous placement of the hyperlink to the conditions of use at the top of the checkout page);[9] *Bell*, 2020 WL 5742189 (granting defendant's motion to compel arbitration where the consumer did not need to click to accept terms but the hyperlinked terms were available on the site); *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018) (finding that a hyperlink to terms and conditions was sufficient to put a user on notice). The notice of the Terms may not dominate the entire Lennar home page

---

[8] The location of the Terms on the home page and other pages has not changed since the filing of the FAC and can be viewed at www.lennar.com. Boone Decl. ¶ 6.

[9] *See also Fagerstrom v. Amazon.com, Inc.*, No. 15-CV-96-BAS-DHB, 2015 WL 6393948, at *12 (S.D. Cal. Oct. 21, 2015) (finding arbitration agreement enforceable where text of the notice was clearly visible when viewing the page)*; PDC Labs., Inc. v. Hach Co.*, No. 09–1110, 2009 WL 2605270, at *3 (C.D. Ill. Aug. 25, 2009) (finding a browsewrap agreement was sufficiently conspicuous to users of a website where a hyperlink to the agreement was included on multiple pages of the website in underlined, blue, contrasting text); *Guadagno*, 592 F. Supp. 2d at 1271 (upholding an arbitration clause contained in terms and conditions that were accessible by hyperlink next to a button on a registration page); *see also Crawford,* 2014 WL 6606563, at *3; *Starke v. Gilt Groupe, Inc.*, No. 13–CV–5497, 2014 WL 1652225, at *2–3 (S.D.N.Y. Apr. 24, 2014); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 841 (S.D.N.Y. 2012); *Swift v. Zynga Game Network, Inc.*, 805 F.Supp.2d 904, 908, 912 (N.D. Cal. 2011); *Hubbert*, 359 Ill.App.3d at 296; *Nguyen*, 763 F.3d at 1177.

display, but they are certainly not "tucked away" in an "obscure corner of the Website where a user in unlikely to encounter them." *Bell*, 2020 WL 5742189 at *6. To the contrary, they are prominently linked in a bold black footer along with other relevant policies and information. Boone Decl. ¶ 6; Ex. B (screenshot from Lennar website). This is more than sufficient to provide reasonable inquiry notice of the terms, and that is all that is required.

#### b. Plaintiff Is More Sophisticated Than the Average Website User, Weighing in Favor of Both Actual and Constructive Notice

Further, considering that she has filed more than a dozen website class actions in 2023 alone, Plaintiff is surely well aware of and on high alert for Terms and Conditions and arbitration clauses. *See Leventis v. AT&T Advert. Sols*., No. 3:11-CV-03437-CMC, 2012 WL 931081, at *6 (D.S.C. Mar. 19, 2012) (finding plaintiff's years of experience placed him on notice that there were Terms and Conditions which were incorporated into a contract and it was his responsibility to obtain and read the terms); *Feldman v. Google, Inc*., 513 F. Supp. 2d 229, 241 (E.D. Pa. 2007) (finding online agreement was not procedurally unconscionable where a plaintiff was a sophisticated purchaser and capable of understanding the agreement's terms).

Common sense dictates that Plaintiff, a frequent "website case" litigant, is on both actual and constructive notice of Terms made available through a hyperlink on a business's website. *See Hubbert*, 359 Ill. App. 3d at 984 ("Common sense dictates that because the plaintiffs were purchasing computers online, they were not novices when using computers."). This factor weighs heavily in favor of showing Plaintiff had reasonable inquiry notice of the Terms.

### 2. Plaintiff's Claims Are Within the Scope of the Arbitration Provision

Arbitration is mandatory where, as here, the parties agreed to submit a covered controversy to arbitration. *Hirshenson v. Spaccio*, 800 So. 2d 670, 674 (Fla. 5th DCA 2001) (quoting *Ocwen Fed. Bank FSB v. LVWD, Ltd.*, 766 So. 2d 248, 249 (Fla. 4th

DCA 2000)). "Deciding whether a particular claim is covered by a broad arbitration provision requires a determination of whether a significant relationship exists between the claim and the agreement containing the arbitration clause, regardless of the legal label attached to the dispute." *Stacy David, Inc. v. Consuegra*, 845 So. 2d 303, 306 (Fla. 2d DCA 2003) (finding an arbitration clause for "any controversy or claim arising out of or relating to" the contract covered fraud, tort and statutory claims).

The arbitration provision in the Terms is broad, encompassing "[a]ny claims or disputes relating to the Properties." Boone Decl. Ex. A at 4. Florida's Second District Court of Appeals has held that "[w]here an arbitration provision contains the words 'relating to' rather than just 'arising from' or 'arising out of' in reference to the claims covered, courts will construe the arbitration provision as having a broader scope." *Olson v. Fla. Living Options, Inc.*, 210 So. 3d 107, 111 (Fla. 2d DCA 2016). Indeed, "[t]he addition of the words 'relating to' broadens the scope of an arbitration provision to include those claims that are described as having a 'significant relationship' to the contract." *Id.*; *Mintz v. Fraade*, 59 So. 3d 1173, 1176 (Fla. 4th DCA 2011) (the use of "arising out of" combined with "relating to" in an arbitration provision requires "the provision [] to be interpreted broadly").

Similarly, California courts have held that arbitration provisions that apply to "[a]ny dispute . . . arising from or out of this . . . [a]greement shall be submitted to arbitration" should be interpreted broadly. *See EFund Cap. Partners*, 150 Cal. App. 4th at 1330 (arbitration provision was broad enough to encompass tort claims); *Coast Plaza Doctors Hosp. v. Blue Cross of Cal.* 83 Cal. App. 4th 677, 684 (2000) ("It is clear that the parties agreed to arbitrate '*any* problem or dispute' that arose under or concerned the terms of the [Agreement]. That contractual language is both clear and plain. It is also very broad. In interpreting an unambiguous contractual provision we are bound to give effect to the plain and ordinary meaning of the language used by the parties.")

All claims and allegations in Plaintiff's FAC undoubtedly arise out of and relate to the website Properties as defined in the Terms. *See, e.g.,* FAC ¶ 6 (stating that Plaintiff's claims arise from her alleged visit to "Defendant's Website using a smart phone" during which she "conducted a brief conversation with an agent of Defendant through the Website's chat feature."). But for Plaintiff utilizing the Lennar website and voluntarily engaging in conversations using its chat function, Plaintiff would have no gripe at all. It is clear, then, that there is a "significant relationship" between the allegations in the FAC and the Terms. *See Murphy v. Courtesy Ford, L.L.C.*, 944 So. 2d 1131, 1133 (Fla. 3d DCA 2006) ("The test for determining arbitrability of a particular claim under a broad arbitration provision is whether a 'significant relationship' exists between the claim and the agreement containing the arbitration clause, regardless of the legal label attached to the dispute.").

### 3. Defendant Has Not Waived its Right to Compel Arbitration

And finally, Defendant has not waived its right to arbitration. "Waiver of the right to arbitration results from active participation in a lawsuit or from taking action inconsistent with that right." *O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd.*, 944 So.2d 181, 185 n. 4 (Fla. 2006). This motion is the first affirmative action Defendant has taken in this litigation. Defendant has not actively participated in this lawsuit, has not served a responsive pleading, has not engaged in discovery, and has not otherwise taken any actions that are inconsistent with the right to arbitrate. Accordingly, Defendant is entitled to enforce the arbitration provision in the Terms.

## V. CONCLUSION

For all of the reasons stated above, Defendant Lennar requests that this Court dismiss the FAC with prejudice pursuant to the FAA. If for any reason the Court finds that dismissal is not appropriate, Defendant requests that the Court stay the litigation pending arbitration pursuant to the FAA.

Dated: January 5, 2024

By: *<u>/s/ Jennifer M. Oliver</u>*
Jennifer M. Oliver, Esq. (SBN 311196)
Jennifer.Oliver@bipc.com
**BUCHANAN INGERSOLL & ROONEY LLP**
600 W. Broadway
Suite 1100
San Diego, CA 92101
Tel: (619) 685-1990
Jennifer.oliver@bipc.com