JENNIFER M. OLIVER (SBN 311196)
JENNIFER.OLIVER@BIPC.COM
BUCHANAN INGERSOLL & ROONEY LLP
ONE AMERICA PLAZA
600 WEST BROADWAY, SUITE 1100
SAN DIEGO, CA 92101
TELEPHONE: 619 239 8700
FAX: 619 702 3898
*ATTORNEY FOR*
*DEFENDANT LENNAR CORPORATION*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

SILVIA GARCIA, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

LENNAR CORPORATION, a Delaware entity d/b/a WWW.LENNAR.COM,

Defendant.

Case No.: 2:23-cv-10298-FMO-DFM

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION**

Hearing Date: May 9, 2024
Hearing Time: 10:00 am
Location: Courtroom 6D
Judge: Hon. Fernando M. Olguin

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................ 1

II. ARGUMENT ............................................................................................. 2

A. The parties' arbitration agreement is enforceable based on a clear showing of constructive notice. ............................................................ 2

B. The cases to which Plaintiff cites are distinguishable. ............................. 6

III. CONCLUSION ......................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) .......... 1, 2, 3

*Cullinane v. Uber Techs., Inc.*,
No. CV 14-14750-DPW, 2016 WL 3751652 (D. Mass. July 11, 2016), *rev'd on other grounds,* 893 F.3d 53 (1st Cir. 2018) .......... 3

*Dickey v. Ticketmaster LLC*,
No. CV 18-9052-GW(GJSX), 2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) .......... 2

*Dohrmann v. Intuit, Inc.*,
No. 20-15466, 2020 WL 4601254 (9th Cir. Aug. 11, 2020) .......... 3

*Fagerstrom v. Amazon.com, Inc.*,
No. 15-CV-96-BAS-DHB, 2015 WL 6393948 (S.D. Cal. Oct. 21, 2015) .......... 3

*Feldman v. Google, Inc.*,
513 F. Supp. 2d 229 (E.D. Pa. 2007) .......... 5

*Garcia v. Hanjin International Corp.*,
2021 WL 4260408 (C.D. Cal. June 16, 2021) .......... 7

*Guadagno v. E*Trade Bank*,
592 F. Supp. 2d 1263 (C.D. Cal. 2008) .......... 4

*Herkenrath v. Move, Inc.*,
No. CV 18-4438-MWF (KSX), 2018 WL 10705782 (C.D. Cal. Aug. 21, 2018) .......... 6

*Holl v. United Parcel Serv., Inc.*,
No. 16-CV-05856-HSG, 2017 WL 11520143 (N.D. Cal. Sept. 18, 2017) .......... 1, 6

*Hubbert v. Dell Corp*,
359 Ill. App. 3d 976 (Ill. Ct. App. 2005) .......... 5

*Leventis v. AT&T Advert. Sols.*,
No. 3:11-CV-03437-CMC, 2012 WL 931081 (D.S.C. Mar. 19, 2012) .......... 5

*Needleman v. Golden 1 Credit Union*,
474 F. Supp. 3d 1097 (N.D. Cal. 2020)....5

*Nevarez v. Forty Niners Football Co., LLC*,
No. 16-CV-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017)....2

*Nicosia v. Amazon.com*,
84 F.Supp.3d 142 (E.D.N.Y. 2015)....3

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023)....2, 4

*PDC Labs., Inc. v. Hach Co.*,
No. 09–1110, 2009 WL 2605270 (C.D. Ill. Aug. 25, 2009)....3

*Portillo v. ICON Health & Fitness, Inc.*,
2019 WL 6840759 (C.D. Cal. Dec. 16, 2019) (Opp. )....7

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006)....4

*Small Justice, LLC v. Xcentric Ventures LLC*,
99 F. Supp. 3d 190 (D. Mass. 2015), amended, No. 13-CV-11701, 2015 WL 5737135 (D. Mass. Sept. 30, 2015), aff'd, 873 F.3d 313 (1st Cir. 2017)....5

*Tompkins v. 23andMe, Inc.*,
2014 WL 2903752 (N.D. Cal. June 25, 2014), aff'd, 840 F.3d 1016 (9th Cir. 2016)....2

*Weber v. Amazon.com, Inc.*,
No. CV 17-8868-GW(EX), 2018 WL 6016975 (C.D. Cal. June 4, 2018)....2

*Wilson v. Huuuge, Inc.*,
944 F.3d 1212 (9th Cir. 2019)....4, 6

*Wilson v. Murillo*,
163 Cal. App. 4th 1124 (2008) (Opp. )....7

**Court Rules**

Fed. R. Evid. 201....4

Defendant Lennar Inc. ("Lennar" or "Defendant") respectfully submits this Reply to Plaintiff's (or "Ms. Garcia's") Response to Defendant's Motion to Compel Arbitration and Dismiss or Stay Litigation ("Opposition" or "Opp.").

## I. INTRODUCTION

Plaintiff fails to overcome Lennar's showing that this Court should enforce the parties' valid arbitration agreement,[1] and resorts instead to irrelevant legal standards and requests to disregard strong evidence of constructive notice.

For instance, Plaintiff asks this Court to analyze the issue of "constructive notice" using factors outlined in an Eastern District of New York case. Opp. at 11 (citing *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015)). But California courts consider factors not listed in *Berkson* when determining constructive notice, and the elements of constructive notice are met under either inquiry.

Plaintiff also asks this Court to ignore the well-established reasonably prudent person standard by disregarding, as a frequent litigant of "website" cases, her extensive knowledge and experience with the placement and existence of a "terms and conditions" hyperlink, Opp. at 38 ¶ 3, which in this case is located directly next to the "Contact Us" link she accessed in order to use Lennar's chat function. *See* First Amended Complaint (alleging use of the chat function as the basis for Plaintiff's claims); Opp. at Ex. 1 (showing Terms and Conditions next to Contact us link).

Plaintiff was on constructive notice of her agreement to arbitrate, her decision not to read the Terms do not invalidate them, and the parties' arbitration agreement is

[1] Plaintiff appears to concede that this dispute is arbitrable. "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the Federal Arbitration Act is phrased in mandatory terms" and "any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration." *Holl v. United Parcel Serv., Inc.*, No. 16-CV-05856-HSG, 2017 WL 11520143, at *3 (N.D. Cal. Sept. 18, 2017).

enforceable under the reasonably prudent person standard. Defendant's Motion to Compel Arbitration and Dismiss or Stay Litigation should be granted in full.

## II. ARGUMENT

### A. The parties' arbitration agreement is enforceable based on a clear showing of constructive notice.

California courts look at the totality of circumstances to determine enforceability of an online arbitration clause. *Nevarez v. Forty Niners Football Co., LLC,* No. 16-CV-07013, 2017 WL 3492110, at *8 (N.D. Cal. Aug. 15, 2017) (holding that "[i]n any event, regardless of whether the Ticketmaster Website's TOU are most appropriately labeled as a 'browsewrap' or a 'clickwrap' agreement, the Court finds that Plaintiffs assented to the Ticketmaster Website's TOU in purchasing their tickets and parking passes on the Ticketmaster Website."); *Oberstein v. Live Nation Ent., Inc*., 60 F.4th 505, 515 (9th Cir. 2023) (allowing terms and conditions with elements from a browsewrap agreement and from a clickwrap agreement). Contrary to Plaintiff's suggestion, California courts have regularly found "browsewrap" agreements to be enforceable based on a showing of constructive notice to the reasonably prudent user. *See, e.g., id.; Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *6 (N.D. Cal. June 25, 2014), aff'd, 840 F.3d 1016 (9th Cir. 2016). Whether a reasonably prudent user was put on constructive notice is determined through analysis of "[t]he features of the webpages" and "the color, placement, language, and repetition of the notices…." *Oberstein*, 60 F.4th at 518.

Plaintiff's choice to ignore the California standard and rely instead on an Eastern District of New York case, *Berkson,* is transparent. Opp. at 5-6. California cases citing *Berkson* have maintained that there is ***no*** "hard and fast rule[]" to establish constructive notice and that *Berkson* is merely guidance. *Weber v. Amazon.com, Inc.,* No. CV 17-8868-GW(EX), 2018 WL 6016975, at *8 (C.D. Cal. June 4, 2018); *Dickey v. Ticketmaster LLC*, No. CV 18-9052-GW(GJSX), 2019 WL

9096443, at *5 (C.D. Cal. Mar. 12, 2019). Other courts have flatly disagreed with *Berkson's* standard.[2] Plaintiff states that "[t]he *Berkson* test has been favorably cited and applied by federal and state trial courts[]" but cites only to another Eastern District of New York case in support of that statement. Opp. at 6, ¶ 11. But regardless of the standard applied, the totality of circumstances, including Plaintiff's prior knowledge, mandate that this matter be arbitrated for at least two reasons.

***First,*** Lennar's Terms and Conditions are located in a hyperlink on the home page of its website, where such terms are typically found. Boone Decl. ¶ 5, *Dohrmann v. Intuit, Inc*., No. 20-15466, 2020 WL 4601254, at *2 (9th Cir. Aug. 11, 2020) (finding an arbitration clause enforceable where, as here, a link appeared "light blue hyperlinks which, if clicked, directed the user to a new webpage," which directed the user to the Terms of Service agreement that contained it); *see also Fagerstrom v. Amazon.com, Inc*., No. 15-CV-96-BAS-DHB, 2015 WL 6393948, at *12 (S.D. Cal. Oct. 21, 2015) (finding arbitration agreement enforceable where text of the notice was clearly visible when viewing the page)*; Nicosia v. Amazon.com*, 84 F.Supp.3d 142, 152 (E.D.N.Y. 2015); *PDC Labs., Inc. v. Hach Co*., No. 09–1110, 2009 WL 2605270, at *3 (C.D. Ill. Aug. 25, 2009) (finding a browsewrap agreement was sufficiently conspicuous to users of a website where a hyperlink to the agreement

---

[2] *Cullinane v. Uber Techs., Inc.*, No. CV 14-14750-DPW, 2016 WL 3751652, at *7 (D. Mass. July 11, 2016), *rev'd on other grounds,* 893 F.3d 53 (1st Cir. 2018) ("[Berkson's first] step, however, obliquely disregards the customary contract analysis applied by the vast majority of courts... A test requiring a showing by the offeror of actual notice of the offeree virtually insures a fact intensive analysis in every case and — as a practical matter — would, through the imposition of such transactions costs for the contract validation process, make otherwise legally compliant arbitration agreements for online contracts all but impossible to enforce. Erosion of the substance of current arbitration rules, by contortion of means for their enforcement, makes those substantive rules illusory. That is not the rule in the majority of jurisdictions; and, in particular, it is not the rule in Massachusetts. The test to be applied in Massachusetts is reasonable notice. The documents properly before me on this motion establish that Uber has demonstrated that plaintiffs were given such notice.").

was included on multiple pages of the website in underlined, blue, contrasting text); *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008) (upholding an arbitration clause contained in terms and conditions that were accessible by hyperlink next to a button on a registration page). The element of "repetitiveness," outlined in *Oberstein* is also met here, since the link appears at the bottom of most if not all other lennar.com pages. *Oberstein*, 60 F.4th at 518, Boone Decl. attached to moving brief at ¶ 5; Ex. B. This is ***not*** a case in which "the terms are available only if users scroll to a different screen, complete a multiple-step process of clicking non-obvious links, or parse through confusing or distracting content and advertisements." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220–1221 (9th Cir. 2019) (cited in Opp. at 15).

And ***second,*** while Lennar's terms are enforceable against any website user, this is especially true when considering the totality of circumstances at play here. Plaintiff's uncontested experience in litigating similar website cases (*see* Motion at fn. 1, listing a sample of 14 previous website cases filed by Plaintiff)[3] demonstrates that she is plainly familiar with the typical format of consumer facing websites that contain terms, contact links, and other information via hyperlinks at the bottom of the page. Furthermore, as alleged in her First Amended Complaint, Plaintiff is, at a minimum, technologically savvy enough to navigate to Lennar's chatbot to communicate with a representative. Her suggestion that this Court ignore these facts pled in her First Amended Complaint should be rejected. Opp. at 24. Common sense dictates that she is even more aware of the usual placement of term and conditions than the average reasonably prudent person, and the law mandates considering that

---

[3]This Court may take judicial notice of court filings and other matters of public record. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); Fed. R. Evid. 201 ("[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

fact. *Hubbert v. Dell Corp*, 359 Ill. App. 3d 976, 984 (Ill. Ct. App. 2005) ("Common sense dictates that because the plaintiffs were purchasing computers online, they were not novices when using computers.").

For example, in *Needleman v. Golden 1 Credit Union*, 474 F. Supp. 3d 1097, 1103–04 (N.D. Cal. 2020), the court held that since the plaintiff opted to engage in online banking and opted to receive electronic bank statements, it was reasonable for a prudent person to understand that important information about online banking would be found on the bank's website rather than via mail. It was also reasonable to expect such a person to "utilize the 'view statements' page to stay apprised of important disclosures." In that case, the user would have been required to go to the "View Statements" online portal, then click on the "Statements" link then click on the "Arbitration Provision" to view the arbitration provision. The court took into account his prior experience with online banking and expected the user to go into the online portal, click through certain pages then find a hyper link that leads to the arbitration clause. *See also Small Justice, LLC v. Xcentric Ventures LLC*, 99 F. Supp. 3d 190, 194 (D. Mass. 2015), amended, No. 13-CV-11701, 2015 WL 5737135 (D. Mass. Sept. 30, 2015), aff'd, 873 F.3d 313 (1st Cir. 2017) (holding that although an internet user was required to scroll down to view the terms and conditions, "a reasonably prudent internet user [] is conversant in the basic navigation tools required to effectively utilize a website."); *Leventis v. AT&T Advert. Sols*., No. 3:11-CV-03437-CMC, 2012 WL 931081, at *6 (D.S.C. Mar. 19, 2012) (finding plaintiff's years of experience placed him on notice that there were Terms and Conditions which were incorporated into a contract and it was his responsibility to obtain and read the terms); *Feldman v. Google, Inc*., 513 F. Supp. 2d 229, 241 (E.D. Pa. 2007) (finding online agreement was not procedurally unconscionable where a plaintiff was a sophisticated purchaser and capable of understanding the agreement's terms).

Plaintiff's remaining arguments are red herrings. For example, none of the other hyperlinks on Lennar's website were titled "Terms and Conditions," and the

state-by-state links to which she refers are in a completely separate section from the Contact Us and Terms links that are relevant here. *C.f.,* Opp. at 13, Opp. at Ex. 1. And while Plaintiff argues that the phrase "Terms and Conditions" is not self-defining (Opp. at 9), after filing numerous other lawsuits alleging website violations, Ms. Garcia was on notice that binding terms, including arbitration clauses, are typically found under that hyperlink. She chose not to look, and commenced this action instead. Plaintiff's "[f]ailure to read an [online] contract in full does not excuse a party from being bound by its contents." *Holl v. United Parcel Serv., Inc.*, No. 16-CV-05856-HSG, 2017 WL 11520143, at *5 (N.D. Cal. Sept. 18, 2017); *see also Herkenrath v. Move, Inc.*, No. CV 18-4438-MWF (KSX), 2018 WL 10705782, at *3 (C.D. Cal. Aug. 21, 2018) ( "Ignoring or failing to review terms and conditions is not, however, a legally valid excuse. An arbitration provision "within a contract may be binding on a party even if the party never actually read the clause.").

Lennar has more than sufficiently shown constructive notice of the parties' agreement to arbitrate, and its motion should be granted.

**B. The cases to which Plaintiff cites are distinguishable.**

The cases Plaintiff cites to suggest that there was no constructive notice are readily distinguishable. For example, in *Byars*, (Opp. at 17) the court held that "[a]lthough the "Terms of Use" can be found at the bottom of the webpage, Goodyear provides no argument suggesting Byars had any reason to scroll to the bottom of the webpage or otherwise saw the "Terms of Use."" That is not the case here. Ms. Garcia has alleged that she communicated with a chatbot (Opp. at 38), a link that can ***only*** be found by scrolling to the "Contact Us" link that ***appears directly next to the Terms and Conditions link***. Opp. at Ex. 1. And in *Wilson v. Huuuge* (Opp. at 1, 17), unlike here, the relevant hyperlink did not lead to the terms at issue. Instead, the user had to copy and paste or manually enter the URL into a web browser to access the Terms. *Wilson,* 944 F.3d at 1214.

The cases Plaintiff cites to suggest that her previous lawsuits must be ignored are also inapposite. First, in *Portillo v. ICON Health & Fitness, Inc.*, 2019 WL 6840759 (C.D. Cal. Dec. 16, 2019) (unreported) (Opp. at 18) the court was not deciding a motion to compel arbitration when it declined to take judicial notice of previous court filings because—unlike here—the fact of those previous cases was not relevant to the legal inquiry necessary to decide the motion ***to dismiss***. Second, in *Garcia* (Opp. at 18) (also unreported), the court declined to take judicial notice of previously filed lawsuits because, unlike here, what the plaintiff learned from her prior filings against other hotels was immaterial. *Garcia v. Hanjin International Corp.*, 2021 WL 4260408, at *2 (C.D. Cal. June 16, 2021). And third, the defendant's arguments in *Wilson v. Murillo*, 163 Cal. App. 4th 1124, 1128 (2008) (Opp. at 18) were focused on whether plaintiff's lawsuits were frivolous or harassing and whether the plaintiff was a vexatious litigant. Lennar makes no such claim. Lennar's arguments regarding Ms. Garcia's previous website suits are not smear attacks or intended to as character evidence; they are undisputed facts highly relevant to the key question of constructive notice and must be considered.

## III. CONCLUSION

For all of the reasons stated above and in Lennar's moving brief, Defendant Lennar requests that its motion be granted and Plaintiff be compelled to litigate her claims as she agreed.

Dated: February 8, 2024

BUCHANAN INGERSOLL ROONEY LLP

By: */s/ Jennifer Oliver*
Jennifer M. Oliver
Attorneys for Defendant
Lennar d/b/a
WWW.LENNAR.COM