UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVIA GARCIA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LENNAR CORPORATION d/b/a WWW.LENNAR.COM,<br><br>Defendant. | Case No. 23-10298 FMO (DFMx)<br><br>**ORDER RE: PENDING MOTION** |

Having reviewed and considered all the briefing filed with respect to defendant's Motion to Compel Arbitration and Dismiss or Stay Litigation (Dkt. 11, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**BACKGROUND**[1]

On October 27, 2023, Silva Garcia ("plaintiff" or "Garcia") filed a putative class action against Lennar Corporation d/b/a www.Lennar.Com ("defendant" or "Lennar") in state court. (See Dkt. 1, Notice of Removal at ¶ 5). Defendant removed the action on December 7, 2023 pursuant to 28 U.S.C. § 1332(a). (See id. at 1). Lennar is a homebuilder that uses its website to provide

[1] Because the parties are familiar with the facts, the court will repeat them below only as necessary. Capitalization, quotation and alteration marks, emphasis and formatting in record citations may be altered without notation.

information and market its homes to potential customers. (See Dkt. 12, Defendant's Memorandum of Points and Authorities in Support of Its Motion ("Memo") at 2); (Dkt. 12-1, Declaration of Tony Boone ("Boone Decl.") at ¶ 2). On December 15, 2023, plaintiff filed the operative First Amended Complaint ("FAC"), asserting claims for violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631(a), 638.51. (See Dkt. 9, FAC at ¶¶ 53-68). Plaintiff's claims arise from her use of defendant's website, which she alleges "secretly enables and allows a third-party spyware company to wiretap and eavesdrop upon the private conversations of everyone who communicates through the chat feature." (See id. at p.2 & ¶¶ 9-27). Plaintiff seeks to represent a class comprised of California residents. (See id. at ¶ 47). Now pending is defendant's Motion, which seeks to compel arbitration based on an arbitration provision included on the website. (See Dkt. 11, Motion); (Dkt. 12, Memo at 1-2).

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. The FAA reflects "both a liberal federal policy favoring arbitration[] and the fundamental principle that arbitration is a matter of contract[.]" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S.Ct. 1740, 1745 (2011) (cleaned up).

"The basic role for courts under the FAA is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Kilgore v. KeyBank, Nat'l Ass'n, 718 F.3d 1052, 1058 (9th Cir. 2013) (internal quotation marks omitted). "The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." Chabolla v. ClassPass Inc., 129 F.4th 1147, 1153 (9th Cir. 2025). "The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." Sanford v. MemberWorks, Inc., 483 F.3d 956, 963 n. 9 (9th Cir. 2007) (internal quotation marks omitted).

**DISCUSSION**

This case raises "a question of ever-increasing ubiquity in today's e-commerce world: whether an internet user's online activities bound her to certain terms and conditions." Chabolla, 129 F.4th at 1151. According to defendant, plaintiff "explicitly and voluntarily consented to Lennar's website Terms and Conditions ('Terms') which were conspicuously posted on its homepage and which included an agreement to arbitrate[.]" (Dkt. 12, Memo at 1-2).

To determine whether such an agreement exists, "federal courts apply ordinary state-law principles that govern the formation of contracts." Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014) (internal quotation marks omitted). "Online contracts are subject to the same elemental principles of contract formation as paper contracts." Chabolla, 129 F.4th at 1154. To form a contract under California law, "there must be actual or constructive notice of the agreement and the parties must manifest mutual assent."[2] Oberstein v. Live Nation Entertainment, Inc., 60 F.4th 505, 512-13 (9th Cir. 2023); Berman v. Freedom Financial Network, LLC, 30 F.4th 849, 856 (9th Cir. 2022) ( "To avoid the unfairness of enforcing contractual terms that consumers never intended to accept, courts confronted with online agreements . . . have devised rules to determine whether meaningful assent has been given. Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."). "Parties traditionally manifest assent by written or spoken word, but they can also do so through conduct." Berman, 30 F.4th at 855. To manifest assent through conduct, "the party must intend the conduct and know, or have reason to know, the other party may infer her assent from the conduct." Chabolla, 129 F.4th at 1154.

---

[2] Defendant contends that "[w]hether considering this issue under Florida or California law, the conclusion is the same: Plaintiff's claims must be arbitrated." (Dkt. 12, Memo at 6). Under the circumstances, the court will apply California law because "no differences exist in the law of the different states as to internet contract formation." See Godun v. JustAnswer LLC, 2025 U.S. App. Lexis 8853, *9 (9th Cir. 2025).

"In the world of internet contracts, there are browsewrap, clickwrap, scrollwrap, and sign-in wrap agreements, each of which purport to bind users through different assent mechanisms." Chabolla, 129 F.4th at 1154 (internal quotation marks omitted). Here, defendant concedes that this action involves a browsewrap agreement. (See Dkt. 12, Memo at 9) ("Lennar's Terms constitute what federal courts have called a 'browsewrap' agreement . . . usually accessible through a hyperlink."). "In a browsewrap, the user accepts a website's terms of use merely by browsing the site, although those terms are not always immediately apparent on the screen." Chabolla, 129 F.4th at 1154 (internal quotation marks omitted); see Berman, 30 F.4th at 856 ("At the other end of the spectrum are so-called 'browsewrap' agreements, in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website."). "Courts consistently decline to enforce browsewraps." Chabolla, 129 F.4th at 1154; see Berman, 30 F.4th at 856 ("Courts are more reluctant to enforce browsewrap agreements because consumers are frequently left unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms.").

A. Reasonably Conspicuous Notice of Terms.

"The context of the transaction, as well as the traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design, inform whether a website provides reasonably conspicuous notice of the terms of an agreement." Chabolla, 129 F.4th at 1155 (internal quotation marks omitted); see id. ("The nature of the service or goods offered and the visual aspects of every page of a multi-page transaction should be considered together."). "[T]o be conspicuous[, the] notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." Berman, 30 F.4th at 856.

As an initial matter, defendant has not pointed to anything in the record indicating the existence of some "continuing relationship" between plaintiff and defendant that would have caused plaintiff to inquire into defendant's terms and conditions. (See, generally, Dkt. 12, Memo at 7-11); see Chabolla, 129 F.4th at 1155 ("The nature of an agreement may anticipate some `sort

of a continuing relationship . . . that would require some terms and conditions.'") (quoting Sellers v. JustAnswer LLC, 73 Cal.App.5th 444, 477 (2021)). Indeed, given that there was no transaction between plaintiff and defendant, there was no reason for plaintiff to expect or otherwise be on the lookout for fine print relating to defendant's terms and conditions. Cf. Berman, 30 F.4th at 869 (Baker, J., concurring) ("In this case involving one-off transactions, reasonably prudent users of defendants' sites are unlikely to be on the lookout for fine print."). In short, the "context of the transaction" weighs against the notice requirement.

As to the visual aspects of the website, "the conspicuousness and placement of the `Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design all contribute to whether a reasonably prudent user would have inquiry notice of a browsewrap agreement." Nguyen, 763 F.3d at 1177; Chabolla, 129 F.4th at 1156 (same). "[W]hile it is permissible to disclose terms and conditions through a hyperlink," the presence of a hyperlink "must be readily apparent," and "[s]imply underscoring words or phrases . . . will often be insufficient to alert a reasonably prudent user that a clickable link exists." Berman, 30 F.4th at 857.

Defendant contends that plaintiff had reasonable inquiry notice of Lennar's Terms because the "Terms are located in a hyperlink on the home page of its website, where such terms are typically found, as well as at the bottom of most if not all other lennar.com pages." (Dkt. 12, Memo at 10); (Dkt. 12-1, Boone Decl. at ¶ 5 & Exh. B). Defendant's contentions are unpersuasive.

"[T]here is no bright-line test for finding that a particular design element is adequate in every circumstance. We must instead consider how those design elements appear on the page." Chabolla, 129 F.4th at 1156-57. Here, the text "Terms & conditions" appears in white text on a black background and is situated among numerous other terms and text in the same font size and color. (See Dkt. 12-1, Exh. B). There is nothing in the website's design calling attention to such terms. See Oberstein, 60 F.4th at 515 ("[A] notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it."). Also, the text is not underscored, further undermining defendant's contention that the notice was conspicuous. See Berman, 30 F.4th at 857 ("Customary design elements denoting the existence

of a hyperlink include the use of a contrasting font color (typically blue) and the use of all capital letters, both of which can alert a user that the particular text differs from other plain text in that it provides a clickable pathway to another webpage."); id. ("Consumers cannot be required to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to ferret out hyperlinks.") (internal quotation marks omitted). In short, "[t]he text disclosing the existence of the terms and conditions on the[] website[] is the antithesis of conspicuous." Berman, 30 F.4th at 856. Indeed, there is nothing indicating that a user of defendant's website has agreed to or committed to anything, let alone defendant's terms and conditions.

B. Unambiguous Manifestation of Assent to Terms.

Even if the court were to find that plaintiff had constructive notice of the arbitration agreement, defendant has failed to address the second part of the test, (see, generally, Dkt. 12, Memo at 9-11); (Dkt. 20, Defendant's Reply ("Reply") at 2-6) – whether plaintiff took "some action, such as clicking a button or checking a box, that unambiguously manifest[ed] . . . her assent to [the] terms." Berman, 30 F.4th at 856; Oberstein, 60 F.4th at 515; Chabolla, 129 F.4th at 1158 ("Reasonable conspicuousness alone is not sufficient to bind a user – a user must agree to the terms, not merely see them."). In other words, defendant has not indicated what action, other than using the website, plaintiff took that unambiguously manifested her assent to the Terms. (See, generally, Dkt. 12, Memo at 9-11); see Berman, 30 F.4th at 857-58 ("The presence of an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound is critical to the enforceability of any browsewrap-type agreement.") (internal quotation marks omitted); Oberstein, 60 F.4th at 515 ("[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement."). By failing to address the manifestation of assent factor,[3] which "is relatively straightforward[,]" Oberstein, 60 F.4th 515, defendant has conceded this factor. See, e.g., Nomadix, Inc. v. Guest-Tek Interactive

[3] Defendant appears to rest its case on the fact that plaintiff has filed similar lawsuits against other parties which makes her "well aware of and on high alert for Terms and Conditions and arbitration clauses." (See Dkt. 12, Memo at 11). However, defendant's speculation is insufficient to find that plaintiff has "unambiguously manifest[ed] . . . her assent" to the Terms.

Ent. Ltd., 2018 WL 10612577, *3 (C.D. Cal. 2018) ("Guest-Tek fails to address the second and third Foman factors, and thus implicitly concedes that there was no bad faith or a repeated failure to cure deficiencies."). Thus, defendant has failed to meet its burden to show that a valid agreement to arbitrate exists.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Defendant's Motion to Compel Arbitration **(Document No. 11)** is **denied**.
2. The stay is hereby **lifted**.

Dated this 21st day of April, 2025.

/s/
Fernando M. Olguin
United States District Judge